T.C. Summary Opinion 2007-199


UNITED STATES TAX COURT


ROBERT A. WHITE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8881-06S.            Filed November 26, 2007.


    Robert A. White, pro se.

    <u>Michael A. Raiken</u> and <u>Scott Hovey</u>, for respondent.


    PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard
pursuant to the provisions of section 7463 of the Internal
Revenue Code in effect at the time the petition was filed.
Pursuant to section 7463(b), the decision to be entered is not
reviewable by any other court, and this opinion shall not be
treated as precedent for any other case.  Unless otherwise
indicated, subsequent section references are to the Internal

Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency of $6,175 in petitioner's 2003 Federal income tax.  After a concession,[1] the issue for decision is whether petitioner is entitled to certain deductions claimed on Schedule A, Itemized Deductions.

## Background

Some of the facts have been stipulated and are so found.  We incorporate the stipulation of facts and attached exhibits herein by this reference.  At the time the petition was filed, petitioner resided in Fort Washington, Maryland.

Petitioner was a staff sergeant in the National Guard and also worked as a customs and immigration inspector for the U.S. Immigration and Naturalization Service (INS).  After a reorganization, petitioner was employed by the Department of Homeland Security (DHS) during tax year 2003.[2]  DHS stationed petitioner at points of entry to inspect persons entering the country.  Petitioner's regular duty location was the Baltimore

---

[1] Respondent conceded that petitioner is not liable for $1,178 identified in the notice of deficiency as "uncollected FICA tax".  Respondent has failed to provide an explanation as to this adjustment.

[2] The Court notes that on Mar. 1, 2003, the Department of Homeland Security absorbed the U.S. Immigration and Naturalization Service (INS).  Thereafter, a new organization called U.S. Customs and Border Protection combined INS inspectors, Border Patrol, and Customs inspectors.  See 6 U.S.C. 251 (Supp. II, 2002).

Washington International Airport (BWI), where he worked a regular, set schedule of about 40 hours per week. He also worked some overtime assignments, often at BWI and sometimes at other locations, such as seaports in and around Baltimore, Maryland. These overtime assignments sometimes began and ended hours before or after his regular shifts.

JD Tax and Accounting Services prepared petitioner's 2003 Federal income tax return, which was timely filed.

Petitioner reported the following items on Schedule A:

<u>Taxes paid</u>

| | |
|---|---:|
| State and local income tax | <u>$4,191</u> |

<u>Charitable contributions</u>

| | |
|---|---:|
| Cash contributions | 755 |
| Noncash contributions | <u>4,960</u> |
| Total charitable contributions | 5,715 |

<u>Job expenses and other miscellaneous deductions</u>:

<u>Unreimbursed employee expenses</u>

| | |
|---|---:|
| Vehicle expenses | 7,196 |
| Parking fees and tolls | 1,285 |
| Business expenses | 5,190 |
| Job search | 325 |
| Resume | 155 |
| Business cards | 105 |
| Briefcase | 210 |
| Cellular telephone | 875 |
| Uniform and cleaning | 1,965 |
| Shoes | 225 |
| Haircuts | 215 |
| Supplies | 525 |
| Accounting fees | 360 |
| Computer | <u>2,285</u> |
| Total unreimbursed employee expenses | 20,916 |
| 2% of adjusted gross income | <u>(1,364)</u> |
| Total miscellaneous after 2% floor | 19,552 |
| Total itemized deductions | 29,458 |

Respondent allowed the deduction for State and local taxes and disallowed all other claimed deductions. In the notice of deficiency, respondent allowed petitioner the standard deduction for 2003 of $4,750 because it was greater than the total itemized deductions allowed.

Petitioner filed a timely petition to this Court, asserting that he is entitled to the itemized deductions claimed on the return.

## Discussion

In general, the Commissioner's determinations set forth in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that these determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Pursuant to section 7491(a), the burden of proof as to factual matters shifts to the Commissioner under certain circumstances. Petitioner has neither alleged that section 7491(a) applies nor established his compliance with the requirements of section 7491(a)(2)(A) and (B) to substantiate items, maintain records, and cooperate fully with respondent's reasonable requests. Petitioner therefore bears the burden of proof.

The issue in this case is whether petitioner is entitled to the itemized deductions claimed for 2003, and, if so, in what amounts. Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he is entitled to any

deduction claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Taxpayers are required to maintain records sufficient to enable the Commissioner to determine their correct tax liability. Such records must substantiate both the amount and purpose of the claimed deductions. Sec. 6001; Higbee v. Commissioner, 116 T.C. 438 (2001); sec. 1.6001-1(a), Income Tax Regs.

When a taxpayer establishes that he has incurred a deductible expense but is unable to substantiate the exact amount, we are generally permitted to estimate the deductible amount. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). To apply the Cohan rule, however, the Court must have a reasonable basis upon which to make an estimate. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

I. Charitable Contributions

Section 170(a) allows as a deduction any charitable contribution made within the taxable year. Deductions for charitable contributions are allowable only if verified under the regulations prescribed by the Secretary. Sec. 170(a)(1).

Petitioner claimed a deduction for $755 of cash contributions during 2003. He did not provide any canceled checks, receipts, or other reliable written records to verify the claimed contributions. He did not provide any contemporaneous, written acknowledgments.

Petitioner testified that in an average year he contributed approximately $100 to the Combined Federal Campaign (CFC) and that it was possible that he did so in 2003. His practice was to write a check to CFC, and the reason for his uncertainty about 2003 was his lack of a canceled check. He further stated that he normally contributes $20 each time he goes to church and that he probably attended church "maybe three times in 2003." Petitioner's testimony was vague and uncertain.

In general, the regulations require the taxpayer to maintain one of the following for each contribution of money: (1) A canceled check; (2) a receipt from the donee; or (3) in the absence of a check or receipt, other reliable written records.[3] Sec. 1.170A-13(a)(1), Income Tax Regs. The taxpayer must establish the reliability of the written records. Sec. 1.170A-13(a)(2)(i), Income Tax Regs. Any contribution of $250 or more shall not be allowed unless the taxpayer substantiates the contribution by a contemporaneous written acknowledgment of the contribution by the donee organization.[4] Sec. 170(f)(8).

---

[3] Both receipts and reliable written records should include the name of the donee, the date of the contribution, and the amount of the contribution. Sec. 1.170A-13(a)(1)(ii) and (iii), Income Tax Regs.

[4] The written acknowledgment must state the amount of cash and a description (but not necessarily the value) of any property other than cash the taxpayer donated and also whether the donee provided any consideration to the taxpayer. Sec. 1.170A-13(f)(2), Income Tax Regs.

We do not accept petitioner's testimony as a reasonable basis to estimate his cash charitable contributions. Respondent's determination as to the claimed cash charitable contributions is sustained.

Petitioner claimed a deduction of $4,950 for noncash charitable contributions. To substantiate his noncash charitable contributions, petitioner provided copies of two receipts from the Salvation Army and two self-prepared logs. One of the receipts does not state the date on which the property was contributed. The other receipt indicates that the contribution was made on May 4, 2006. Neither receipt contains the value of the items contributed.

To verify a charitable contribution for property other than money, the regulations require the taxpayer to maintain a receipt from the donee for each contribution showing the following: (1) The name of the donee; (2) the date and location of the contribution; and (3) a description of the property in detail reasonably sufficient under the circumstances. Sec. 1.170A-13(b)(1), Income Tax Regs. Where it is "impractical" to obtain a receipt, the taxpayer must maintain "reliable written records" of the noncash contributions.[5] See id. However, deductions for

---

[5] A reliable written record for purposes of substantiating a noncash contribution shall contain the name and address of the donee, the date and location of the contribution, a description of the property, and the fair market value of the property at the
(continued...)

contributions of $250 or more under section 170(a), whether cash or property, must be substantiated by a contemporaneous written acknowledgment of the contribution by the donee organization. Sec. 170(f)(8).

The contribution logs are neither receipts nor acknowledgments prepared by the donee organization. The receipts and contribution logs do not meet the substantiation requirements of section 1.170A-13(b)(1), Income Tax Regs., nor do they meet the heightened substantiation requirements of section 170(f)(8).[6] Respondent's determination as to the claimed noncash charitable contributions is sustained.

## II. Miscellaneous Itemized Deductions

On his 2003 Schedule A, petitioner reported unreimbursed employee expenses totaling $20,916. After accounting for the 2-percent floor of section 67(a), petitioner claimed a miscellaneous itemized deduction of $19,552.

Respondent disallowed all of the miscellaneous itemized deductions because petitioner did not prove to respondent that he paid or incurred the expenses in 2003 or that the expenses were

---

[5](...continued)
time of the donation. Sec. 1.170A-13(b)(2)(ii), Income Tax Regs.

[6] Petitioner told his return preparer that he donated used clothes and furniture in 2003. However, he had no idea how his return preparer arrived at the deduction claimed in the amount of $4,950; "when I saw the 4,000 I couldn't phantom [sic] donating 4,000 worth of clothes."

ordinary and necessary for petitioner's business.  Respondent asserts that petitioner was eligible for reimbursement from DHS for expenses incurred performing his duties.

Section 162 allows deductions for all ordinary and necessary business expenses paid or incurred during the taxable year in carrying on a trade or business.  Performing services as an employee constitutes a trade or business.  Primuth v. Commissioner, 54 T.C. 374, 377-378 (1970).  Those expenses that are (1) ordinary and necessary to the taxpayer's business and (2) paid or incurred in a given year are deductible that year.  Sec. 162(a); see sec. 1.162-17(a), Income Tax Regs.  However, personal, living, or family expenses are not deductible.  See secs. 162(a), 262(a); sec. 1.162-17(a), Income Tax Regs.

Certain categories of expenses must also satisfy the strict substantiation requirements of section 274(d) before those expenses will be allowed as deductions.  Expenses subject to section 274(d) include travel and meal expenses, as well as expenses for listed property, such as passenger automobiles, computers, and cellular telephones.  Secs. 274(d), 280F(d)(4). The taxpayer must substantiate the amount, time, place, and business purpose of the expenditures and must provide adequate records or sufficient evidence to corroborate his own statement. See sec. 274(d); sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).  In order to meet the

"adequate records" requirement, a taxpayer is to maintain an account book, diary, statement of expenses, or similar record and documentary evidence (such as receipts, paid bills, or similar evidence) which, when combined, establish each element of the expense that section 274(d) requires substantiated. Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). Section 274(d) supersedes the general rule of Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), and prohibits the Court from estimating the taxpayer's expenses with respect to expenses subject to the strict substantiation requirement. Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969).

We now consider whether petitioner is entitled to some or all of the claimed miscellaneous itemized deductions.

Vehicle Expenses

Using the standard mileage rate, petitioner claimed a deduction in the amount of $7,196 for vehicle expenses. At trial, petitioner testified that because his tax preparer told him that trips to work outside his normal commute were deductible, he has been claiming deductions for driving to overtime shifts since he started working for the Government in 1997. For 2003, he provided his return preparer with the total number of miles he drove and an estimate of how many miles were

for overtime work. The preparer calculated the total expense deduction.

Petitioner introduced 69 Inspection Overtime Forms and 12 monthly printouts of a computer calendar for 2003. The Court finds that petitioner worked the overtime shifts reflected on the Inspection Overtime Forms. The monthly computer calendar printouts purport to substantiate the dates, overtime hours, locations, and miles driven for petitioner's overtime shifts.

Petitioner drove to various locations for overtime work, including BWI, his usual place of business. He typically returned home before and after performing overtime inspections at other locations. He rarely drove directly from BWI to a second work location.

Petitioner did not identify the overtime shifts for which he drove directly from one work location to a second work location. Instead, he contends that all transportation for overtime is deductible if outside his usual commute. Transportation expenses for trips between two places of business are deductible, but transportation to and from work, whether for a regular shift or for an overtime shift, is a nondeductible personal commuting expense. See Curphey v. Commissioner, 73 T.C. 766, 777 (1980).

Furthermore, petitioner admitted that DHS reimbursed him for transportation expenses and that DHS provided a Government car for trips between BWI and the seaport for ship inspection

assignments during his normal shifts.  Petitioner claimed that DHS told inspectors that they were not authorized for vehicle expenses reimbursement for overtime shifts because DHS was paying them overtime.  Petitioner has not introduced any evidence to support his assertion that reimbursement was denied for any of his transportation in a personal automobile between duty posts (i.e., noncommuting transportation between business locations).

Where an employee incurs expenses for which he is entitled to, but does not, seek reimbursement, he is not allowed to deduct those expenses.  Walliser v. Commissioner, 72 T.C. 433, 437 n.4 (1979); Wollesen v. Commissioner, T.C. Memo. 1987-611, affd. without published opinion 875 F.2d 317 (4th Cir. 1989).

Finally, even if petitioner claimed and DHS denied reimbursement for the noncommuting expenses, petitioner did not furnish any evidence to show how many of the miles driven were between places of business.  The Court concludes that the evidence petitioner presented is insufficient to satisfy the strict substantiation requirements of section 274(d). Respondent's determination as to the claimed vehicle expense deduction is sustained.

### Parking Fees and Tolls

Petitioner claimed a deduction of $1,285 for unreimbursed parking fees and tolls.  Petitioner did not provide any evidence to support these expenses, to demonstrate that they were for

business transportation rather than for personal commuting expenses, or to show that he was not eligible for reimbursement from DHS.  Furthermore, petitioner testified that he did not know how his return preparer came up with the figure for this deduction.  Respondent's determination as to the claimed parking fees and tolls deduction is sustained.

Business Expenses

Petitioner claimed a $5,190 deduction for other employee business expenses.[7]  As with the claimed deduction for parking fees and tolls, petitioner did not provide any evidence to support this deduction, and he testified that he did not know how his return preparer came up with the figure for this deduction. Respondent's determination as to the claimed business expense deduction is sustained.

Job Search and Resume

Petitioner claimed deductions of $325 for job search expenses and $155 for resume expenses.  He testified that the expenses were for computer ink and ribbons consumed to print job announcements and his resume and for having his resume professionally prepared.

---

[7] On line 4 of Form 2106, Employee Business Expenses, petitioner reported expenses other than vehicle expenses; parking fees, tolls, and transportation; travel expenses while away from home overnight; and meals and entertainment.

To the extent that an employee incurs expenses searching for new employment in the employee's same trade or business, the job search expenses are deductible under section 162(a). See <u>Primuth v. Commissioner</u>, 54 T.C. at 377-378. However, if the employee is seeking a job in a new trade or business, the expenses are not deductible under section 162(a). See <u>Frank v. Commissioner</u>, 20 T.C. 511, 513-514 (1953). Job search expenses include resume preparation expenses, postage, and travel and transportation expenses. See <u>Murata v. Commissioner</u>, T.C. Memo. 1996-321.

Petitioner did not provide any documentary evidence that he actually incurred any job search or resume expenses in 2003. We do not accept petitioner's testimony as a reasonable basis to estimate any job search or resume expenses. Respondent's determination as to the claimed job search and resume expense deductions is sustained.

### Business Cards and Briefcase

Petitioner claimed deductions of $105 for business cards and $210 for a briefcase. Petitioner did not provide any receipts to document that he purchased these items in 2003.

Petitioner introduced a business card that identifies him as an immigration inspector for the INS within the Department of Justice.[8] Petitioner testified that "We weren't allowed business

---

[8] Petitioner began working for the INS in 1997 and did not specify when he purchased these business cards. These cards were
(continued...)

cards at that time, so I had to go out and purchase business
cards on my own."

Petitioner also testified that he may have attended two
training sessions in 2003 and that he purchased a briefcase to
carry materials back from a training session in Georgia.  He did
not specify when he bought the briefcase.

We are not convinced that petitioner purchased these items
in 2003, particularly given the short shelf life of any INS
business cards printed in 2003, see supra note 8.  We do not
accept petitioner's testimony as a reasonable basis to estimate a
2003 deduction for these expenses, in the absence of documentary
proof that petitioner actually purchased the business cards and
briefcase in 2003.  Respondent's determination as to the claimed
business card and briefcase expense deductions is sustained.

Cellular Telephone

Petitioner claimed a deduction of $875 for cellular
telephone expenses in 2003.  Petitioner asserted that he incurred
these charges making work-related calls when on overtime
assignments.  Petitioner did not offer any receipts, bills, or
other documentary support for these expenses.

Petitioner has failed to meet the strict substantiation
requirements required by sections 274(d) and 280F(d)(4)(A)(v) for

----

8(...continued)
obsolete by March of 2003, since petitioner worked for a
different organization at that point.  See supra note 2.

cellular telephone expenses, and he has failed to demonstrate that he was not eligible for reimbursement for any such work-related expenses.  Respondent's determination as to the claimed cellular telephone expense deduction is sustained.

Uniform and Cleaning

Petitioner claimed a deduction of $1,965 for the cost of cleaning his military and DHS uniforms in 2003.

As an immigration inspector, petitioner wore a white shirt with insignia on the sleeves, blue slacks, and, depending on the season, a uniform jacket with an insignia on the chest.  Normal washing was at times insufficient to clean the DHS uniform.  For example, if petitioner rubbed against a greasy cable when inspecting a ship, ordinary laundering would not remove the stain.  Professional cleaning was at times necessary.

Two days each month and 2 weeks each year, petitioner attended National Guard drills.  Petitioner estimated that he paid $12 each time he had his military uniform cleaned. Petitioner did not offer any estimate of the cost to clean his DHS uniform or indicate how often his uniforms required professional cleaning.

Petitioner described only cleaning expenses.  He did not testify that he spent more to purchase uniforms than any uniform allowance provided by DHS or the National Guard.  Petitioner admitted that he did not know how his return preparer arrived at

the $1,965 deduction for cleaning expenses and did not offer any receipts to substantiate any cleaning expenses.

Where business clothes are suitable for general wear, their cost is generally not deductible.  However, where custom and usage forbid wearing a uniform when off duty, deduction is allowed.  The cost of maintaining clothes for work is deductible when the purchase price was deductible.  Hynes v. Commissioner, 74 T.C. 1266, 1290 (1980).

We accept petitioner's testimony that professional cleaning was at times necessary for his uniforms, and we find that it would have been improper for petitioner to wear either his DHS uniform or his military uniform when off duty.  We conclude that petitioner is entitled to a deduction for uniform cleaning in the amount of $480 for 2003.[9]

Shoes

Petitioner claimed a $225 deduction for expenses relating to work shoes.  Petitioner testified that he had an allowance for shoes but would occasionally have his shoes repaired and that he spent $225 in 2003 on shoe repair.  Petitioner estimated that each heel repair cost $25 to $40 but did not offer any receipts or any details of how often such repairs were necessary.

---

[9] When estimating the taxpayer's expenses, the Court's findings bear heavily against the taxpayer whose inexactitude is of his own making.  Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930).  We allow 15 cleanings of his military uniform at $12 each and 50 cleanings of his DHS uniform at $6 each.

Absent some documentary evidence that petitioner actually repaired any shoes in 2003 notwithstanding his shoe allowance, we do not accept petitioner's testimony as a reasonable basis to estimate his shoe repair expenses. Respondent's determination as to the claimed shoe expense deduction is sustained.

Haircuts

Petitioner claimed a deduction of $215 for haircuts in 2003. Petitioner testified that he paid $60 per month for haircuts and that his return preparer advised him that, since DHS and the military require petitioner to be well groomed, his weekly haircuts were deductible.

Grooming remains an inherently personal expense and is not deductible, regardless of whether an employer requires a particularly neat appearance. Hynes v. Commissioner, supra at 1291-1292. Respondent's determination as to the claimed haircut expense deduction is sustained.

Supplies

Petitioner claimed a deduction of $525 for supplies but at trial testified that the only supply expenses he incurred in 2003 were those related to his job search (discussed above). He was unable to explain how his return preparer came up with the $525 supplies expense figure. Respondent's determination as to the claimed supplies expense deduction is sustained.

Accounting Fees

Petitioner claimed a deduction in 2003 of $360 for accounting fees as an unreimbursed employee business expense.[10] Petitioner testified that he paid his return preparer in cash. He did not produce any receipts.

It is apparent from the evidence that petitioner paid to have his 2003 Federal income tax return prepared.[11] We conclude that petitioner is entitled to a deduction for tax preparation expenses paid in 2003 in the amount claimed, $360.

Computer

Petitioner claimed a deduction of $2,285 for a computer but did not produce any receipts or other records to support the deduction. Computers are listed property, subject to the strict substantiation requirements of section 274(d). Secs. 274(d), 280F(d)(4)(A)(iv). Accordingly, we may not estimate an allowable deduction for petitioner's claimed computer expense.

---

[10] Petitioner testified that he paid this amount to his return preparer for 2003. The record does not indicate why petitioner included the accounting fees expense with his unreimbursed employee business expenses on line 20 of Schedule A, Itemized Deductions, rather than on line 21, which is labeled Tax Preparation Fees.

[11] Petitioner's 2003 return includes the name of petitioner's return preparer, as well as the preparer's Social Security number or paid preparer tax identification number, the name and address of the firm petitioner used, JD Tax Accounting Services, and the phone number and employer identification number of that firm.

Furthermore, petitioner testified that he bought a computer but that he was uncertain whether he purchased it in 2003. Respondent's determination as to the claimed deduction for computer expenses is sustained.

To reflect the foregoing,

Decision will be entered

under Rule 155.[12]

--------

[12] The deductions allowed herein do not appear to exceed the 2-percent floor imposed by sec. 67(a) on the miscellaneous itemized deductions of individuals. Accordingly, the standard deduction may well exceed petitioner's allowed itemized deductions. We leave the calculations to the parties.